UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

DARIUS JEAN,

      Petitioner,                                     07 Civ. 11530 (KMW)

      v.                                         OPINION AND ORDER

GARY GREENE, Warden,
Great Meadow Correctional Facility,

      Respondent.
───────────────────────────────────────────────

KIMBA W. WOOD, U.S.D.J.:

## I. INTRODUCTION

      Darius Jean ("Petitioner") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his November 21, 2002 conviction in County Court, Rockland County, for murder in the second degree, manslaughter in the first degree, assault, and endangering the welfare of a child. Petitioner raises four grounds for relief: (1) that the trial court's instructions to the jury regarding reasonable doubt impermissibly shifted the burden of proof and confused the jury; (2) that statements Petitioner made to police officers were involuntarily given and should have been suppressed; (3) ineffective assistance of trial counsel; and (4) ineffective assistance of appellate counsel.

      In a Report and Recommendation (the "Report") dated May 10, 2011, familiarity with which is assumed, Magistrate Judge Smith recommended that the Court deny the petition. Petitioner filed timely objections to the Report. Pursuant to Federal Rule of Civil Procedure 72(b), the Court has conducted a *de novo* review of the Report and of Petitioner's objections.

1

For the following reasons, the Court adopts Magistrate Judge Smith's Report in full, and denies Petitioner's motion for a writ of habeas corpus.

## II. BACKGROUND[1]

On August 5, 2002, a jury convicted Petitioner of murder in the second degree, manslaughter in the first degree, assault, and endangering the welfare of a child. (Affirmation of Senior District Attorney Carrie A. Ciganek in Opposition to the Petition for Habeas Corpus ("Ciganek Aff.") ¶¶ 3, 10.) The trial court sentenced Petitioner to 25 years to life on the murder count, a concurrent term of imprisonment of 8 1/3 to 25 years on the manslaughter count, a concurrent term of imprisonment of 7 years on the assault count, and a concurrent term of imprisonment of 1 year on two counts of endangering the welfare of a child. (*Id.* ¶ 3.)

Petitioner timely moved to set aside the verdict pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") § 330.30(2) on the grounds of juror confusion; following a hearing, the trial court denied the motion. (*Id.* ¶ 11.) Petitioner then timely moved to vacate the conviction pursuant to N.Y. C.P.L. §440.10(1)(h) on the grounds that Petitioner's trial counsel was ineffective. The trial court denied the motion on August 18, 2003, and the Appellate Division, Second Department, denied Petitioner's motion for leave to appeal. (*Id.* ¶¶ 12-13.) On May 4, 2004, Petitioner's appellate counsel filed a direct appeal with the Appellate Division, Second Department. Following argument on the matter, the Appellate Division affirmed Petitioner's conviction. (*Id.* ¶¶ 14-15.) *See People v. Jean*, 13 A.D.3d 466 (N.Y. App. Div. 2004). Petitioner sought leave to appeal to the New York State Court of Appeals on January 18, 2005; the Court of Appeals denied the application. (Ciganek Aff. ¶ 17.) *See People v. Jean*, 5

---

[1] The Report's "Background" section provides additional information about the factual and procedural context of the case. The Court adopts this section in its entirety.

N.Y.3d 764 (2005). On March 7, 2007, Petitioner filed a petition for a writ of error *coram nobis* in the Appellate Division, Second Department, claiming ineffective assistance of appellate counsel. (Ciganek Aff. ¶ 18.) In a decision dated September 18, 2007, the Appellate Division denied Petitioner's motion. (*Id.* ¶ 20.) *See People v. Jean*, 43 A.D.3d 1076 (N.Y. App. Div. 2007). Petitioner's motion to the New York Court of Appeals for leave to appeal was denied. (Ciganek Aff. ¶ 21.) *See People v. Jean*, 9 N.Y.3d 1007 (2007). On December 26, 2008, Petitioner filed the instant petition for a writ of habeas corpus.

## III. DISCUSSION

### A. Standard of Review of a Magistrate Judge's Report and Recommendation

A district court must review *de novo* those portions of a magistrate judge's report and recommendation to which timely written objections have been filed. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1)(C). If neither party timely objects to the magistrate's report, the district court "need only satisfy itself that there is no clear error on the face of the record." *Brito v. Phillips*, 485 F. Supp. 2d 357, 360 (S.D.N.Y. 2007) (Holwell, J.) (internal citations and quotations omitted).

Petitioner filed objections to the Report's analysis of each of his four claims. The Court thus undertakes a *de novo* review of all four claims.

### B. Overview of Applicable Law

Petitions for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that a federal court may grant a writ of habeas corpus to a state prisoner only if the state court's adjudication of a particular claim on the merits resulted in a decision that was (1) "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a [Supreme Court decision] and nevertheless arrives at a [different] result." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

A state court decision involves an unreasonable application of federal law if the state court correctly identifies the governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Williams* at 407. A state court decision can also involve an unreasonable application of federal law if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. In order for a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court decision must be more than incorrect: it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). This standard "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000) (internal quotations omitted).

**C. Analysis**

Petitioner raises four grounds for habeas corpus relief: (1) that the trial court's instructions to the jury regarding reasonable doubt impermissibly shifted the burden of proof and confused the jury (the "Jury Instruction claim"); (2) that Petitioner's statements were

involuntarily given and should have been suppressed (the "Fifth Amendment claims"); (3) ineffective assistance of trial counsel; and (4) ineffective assistance of appellate counsel.

### 1. Petitioner's Jury Instruction Claim

Petitioner first argues that the trial court's jury instruction on reasonable doubt impermissibly reduced the prosecution's burden of proof and confused the jury such that it was unreasonable for the Appellate Division to find that the instruction did not violate his constitutional rights. (Petitioner's Memorandum of Law in Support of his Petition for a Writ of Habeas Corpus ("Pet. Mem.") at 4.) The trial judge gave a pretrial instruction to the jury stating that reasonable doubt was "higher than 51 percent and something less than 100 percent." (Pet. Mem., Ex. F, Transcript of Proceedings at 51-53). When defense counsel objected to this mathematical illustration on the grounds that it suggested that the reasonable doubt standard was close to the preponderance of the evidence standard, the judge reinstructed the jury with a proper instruction. (Pet. Mem., Ex. F at 65-66). At the conclusion of trial, the jury charge concerning reasonable doubt was accurate.[2] *People v. Jean*, 13 A.D. 3d 466 (2004). The Appellate Division

---

[2] The trial judge ultimately instructed the jury as follows:

> A reasonable doubt means a doubt arising from the evidence or lack of evidence in the case. It does not mean guesswork or surmise or speculation, and it should not be resorted to as an excuse for failing to perform a duty even though that duty may prove to be an unpleasant one or a disagreeable one. It is such a doubt as reasonable men and women may entertain after a careful and honest review and consideration of all the evidence in the case. . . . The proof must be sufficient to satisfy you and your fellow jurors' consciences so that you believe that the defendant committed the crimes charged and/or crime charged and that no other reasonable conclusion is possible. . . . It is your duty to weigh and analyze the evidence, and in so doing if you find something in the evidence or a failure of the evidence which causes you to have a reasonable doubt as to the guilt of the defendant, it is your duty to give the defendant the benefit of that doubt and acquit him on that crime or crimes.

(Report at 16, citing Transcript of Proceedings at 903-05).

found that "any prejudice resulting from the County Court's improper pretrial instruction was obviated by the final charge given to the jury." *Id.* at 468.

The Report recommends dismissing Petitioner's Jury Instruction claim because, viewed in its entirety, the reasonable doubt instruction comports with established federal law. (Report at 17). Petitioner objects to this recommendation on the ground that the error was so egregious that any finding to the contrary would be unreasonable as a matter of law. (Petitioner's Objections to the Report and Recommendation ("Pet. Objs.") at 2.)

The Constitution requires a jury verdict of guilty beyond a reasonable doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993). When determining the constitutionality of a jury charge, a court must decide if, "taken as a whole, the instructions correctly convey the concept of reasonable doubt to the jury." *Victor v. Nebraska*, 114 S. Ct. 1239, 1243 (1994) (internal citations omitted). A jury's conviction will not be overturned unless a reviewing court concludes that it was "reasonably likely that the jury applied the wrong standard." *Chalmers v. Mitchell*, 73 F. 3d 1262, 1267 (2d Cir. 1996) (internal quotations omitted). Stated another way, a defendant's due process rights are violated if he is evaluated by a standard lesser than proof beyond a reasonable doubt. *Id*. Consequently, a guilty verdict reached by application of a lesser standard "must be overturned." *Id*. While a constitutionally deficient reasonable doubt charge is a ground for reversal of a conviction, "not every unhelpful, unwise, or even erroneous formulation of the concept of reasonable doubt in a jury charge renders the instruction constitutionally deficient." *Vargas v. Keane*, 86 F. 3d 1273, 1277 (2d Cir. 1996). "A challenged portion of the jury instructions may not be judged in artificial isolation, but rather must be judged as the jury understood it, as part of the whole instruction, and indeed, as part of all the proceedings that were observed by the jury." *Chalmers*, 73 F.3d at 1267 (internal quotations and citations omitted).

The Court finds Petitioner's Jury Instruction claim to be without merit. Although it is true that *Sullivan* holds that a constitutionally deficient reasonable doubt jury instruction cannot be harmless error, that decision is inapplicable to the instant case. The question here is *whether*, as an initial matter, the charge was constitutionally deficient; only if the charge is determined to be unconstitutional does *Sullivan* require reversal of a conviction.

Whether the charge was constitutionally deficient in the first instance requires an examination of the charge as a whole. *Victor*, 114 S. Ct. at 1248. An analysis of the charge as a whole here supports the Appellate Division's finding. There is no evidence to show that it was "reasonably likely that the jury would have interpreted this instruction to indicate that the doubt must be anything other than a reasonable one." *Id.* at 1250. Therefore, the Appellate Division's finding that the pretrial charge was obviated by the final charge comports with established federal law. *Cf. Santorelli v. Cowhey*, 124 F. Supp. 2d 853, 859 (S.D.N.Y. 2000) (Parker, J.) (finding that portions of a reasonable doubt charge that were delivered after the jury heard the language to which the petitioner objected "were sufficient to defeat Petitioner's claim that the objectionable language was reasonably likely to instruct the jury to apply that standard in a way that violates the Constitution"); *Jackson v. Conway*, 448 F. Supp. 2d 484, 490-91 (W.D.N.Y. 2006) (Bianchini, J.) (upholding a reasonable doubt charge when the instructions, "considered as a whole, leave no doubt that the defendant must be presumed to be innocent and that the burden of proof rests with the prosecution throughout the trial").

For the foregoing reasons, the Court adopts the Report's recommendation that Petitioner's Jury Instruction claim be dismissed.

### 2. Petitioner's Fifth Amendment Claims

In his second claim, Petitioner argues that the statements he gave to the police should have been suppressed because he was suffering from post-traumatic stress disorder at the time he was questioned. (Pet. Mem. at 10.) He further contends that his girlfriend acted as an agent of the police and elicited statements from him that should not have been admitted at trial. (*Id*. at 11-13.) After a suppression hearing, the trial court found that Petitioner's statements were admissible because they were not obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). (Pet. Mem., Ex. C, Decision and Order dated August 25, 2002). The Appellate Division affirmed. *People v. Jean*, 13 A.D.3d at 467.

The Report recommends a finding that Petitioner's Fifth Amendment claims are without merit, and that even if the confession was erroneously admitted, it was harmless error not giving rise to habeas relief.[3] Petitioner asserts that any finding that his statements were voluntary is an unreasonable application of federal law because he was unable knowingly and intelligently waive his *Miranda* rights. (Pet. Objs. at 11.) Further, Petitioner objects to the Report's conclusion that any error was harmless. (*Id*. at 12.)

In a habeas corpus proceeding, "the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for *independent federal determination*." *Miller v. Fenton*, 106 S. Ct. 445, 450-51 (1985) (emphasis added). The determination of whether a confession was voluntary "requires careful evaluation of all the circumstances of the

---

[3] The Report, in addressing Respondent's contention that Petitioner's post-traumatic stress disorder argument had never been presented to the state courts, found that Petitioner's Fifth Amendment claims are not procedurally barred. Neither party objected to this finding. The Court finds no clear error in this section of the Report.

interrogation." *Mincey v. Arizona*, 437 U.S. 385, 401 (1978). A confession is not voluntary when it is obtained under circumstances that overbear the defendant's will. *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991); *see also Lynumn v. Illinois,* 372 U.S. 528, 534 (1963) (holding that a confession that was obtained by coercion was not voluntary).

If a court finds that a confession was involuntary, the subsequent inquiry is whether its admission at trial constituted harmless error. *Zappulla v. New York*, 391 F.3d 462, 466 (2d Cir. 2004). The Second Circuit recognizes two approaches to harmless error analysis: the "actual prejudice" approach and the "harmless beyond a reasonable doubt" approach. *Perkins v. Herbert*, 596 F.3d 161, 175 (2d Cir. 2010). Under the actual prejudice approach, "habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1722 (1993) (internal quotations omitted). The error must have a "substantial and injurious effect or influence in determining the jury's verdict." *Id*. Under the harmless beyond a reasonable doubt approach, when a federal court reviews a state court's harmless error determination, it may reverse only those determinations "that are objectively unreasonable." *Zappulla*, 391 F.3d at 467. Under this test, the writ may not be issued simply if the federal court concludes that the state court applied federal law *incorrectly*; rather, the application must also be *unreasonable*. *Perkins*, 596 F.3d at 176 (emphasis added). When the result would be the same under either approach, the Second Circuit has declined to determine which approach should govern. *Id*. at 176-77.

After conducting a *de novo* review of the Report's independent determination that Petitioner's confession was voluntary and that his girlfriend was not acting as an agent of the police, the Court agrees with the Report and dismisses Petitioner's Fifth Amendment claims. The Court concurs in the Report's finding that the evidence shows that Petitioner was calm and

coherent at the time he was advised of, and waived, his *Miranda* rights. (Pet. Mem., Ex. A, Transcript of Suppression Hearing at 71-73, 161-74). Petitioner never invoked his right to remain silent or to have an attorney present. (*Id*.) The testimony given by Petitioner's girlfriend does not substantiate Petitioner's claim that she acted as an agent of the police. (*See id*. at 274-79, 296, 298). In sum, the Report's independent determination that Petitioner's confession was voluntary is supported by a careful consideration of the totality of the circumstances.[4]

The Court thus adopts the Report's recommendation that Petitioner's Fifth Amendment claims be dismissed.

### 3. Petitioner's Ineffective Assistance of Trial Counsel Claim

In this third claim, Petitioner argues that the Appellate Division mistakenly found that his trial attorney provided effective assistance of counsel. Specifically, Petitioner asserts that his attorney made several errors while trying the case, and had an actual conflict of interest that prevented him from providing meaningful representation. (Pet. Mem. at 13-21.) The Report found this claim to be without merit because Petitioner failed to show that trial counsel's performance fell below an objective standard of reasonableness or that Petitioner was prejudiced by any deficient performance. (Report at 30). Petitioner objects to this finding.

Pursuant to the Sixth Amendment, "[a]n accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland v. Washington*, 104 S. Ct. 2052, 2063 (1984) (internal quotations omitted). The Supreme Court has recognized that the right to counsel is the right to "*effective* assistance of

---

[4] Because the confession was not admitted erroneously, it is unnecessary to engage in a harmless error analysis. However, the Court concurs with the Report's finding that even if the confession were erroneously admitted, the state courts' determination that the error was harmless was not an incorrect or unreasonable application of federal law.

counsel." *Id*. (internal quotations omitted) (emphasis added).  Effectiveness means that the attorney's performance was reasonable "under prevailing professional norms." *Id*. at 2064.  An ineffective assistance of counsel claim requires a defendant to make two showings.  First, the defendant must show that his attorney's performance was deficient — that the attorney "made errors so serious that [he] was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*.  In other words, "the defendant must show that counsel's representation fell below an *objective standard of reasonableness*." *Id*. (emphasis added).

Second, the defendant must show that his attorney's deficient performance prejudiced the defense, which requires the defendant to prove that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Id*.  The Second Circuit has described the *Strickland* standard as "rigorous," and has noted that "the great majority of habeas petitions that allege constitutionally ineffective counsel founder on [it]." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (internal quotations omitted).  Moreover, application of *Strickland* requires a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Hemstreet v. Greiner*, 491 F.3d 84, 90 (2d Cir. 2007) (internal quotations omitted).

When a defendant's attorney is burdened by conflicting interests, "[p]rejudice is presumed *only if* the defendant demonstrates that counsel 'actively represented conflicting interests' and that an 'actual conflict of interest *adversely affected* his lawyer's performance.'" *Strickland*, 104 S. Ct. at 2067 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350) (emphasis added).  In other words, an actual conflict of interest exists only if defense counsel's conflicted interests adversely affected counsel's performance. *Cuyler*, 446 U.S. at 350.

For an ineffective assistance of counsel claim to give rise to habeas relief, AEDPA requires a petitioner to demonstrate that the state court's "application of *Strickland* was not merely incorrect, but objectively unreasonable." *Id*. at 89 (internal quotations omitted).

The Court finds that the Appellate Division's conclusion that Petitioner's trial attorney provided meaningful representation is not contrary to, or an unreasonable application of, *Strickland*. Petitioner asserts that his attorney failed to make proper objections, failed to effectively conduct cross examinations, and failed to present an effective summation at trial. The Court agrees with the Report's categorization of these as strategic choices. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 104 S. Ct. at 2065. This deference requires the defendant to overcome a strong presumption that the challenged action "might be considered sound trial strategy." *Id*. Strategic choices "are virtually unchallengeable." *Id*. at 2066. Petitioner cannot meet either requirement of *Strickland*: he has failed to make a showing that his trial attorney's performance fell below an objective standard of reasonableness, or that he was prejudiced by any errors counsel may have made.

Petitioner's conflict of interest argument is also without merit.[5] The trial court found that the conflict was a waivable one, and that Petitioner in fact validly waived his right to conflict-free representation. (Pet. Mem., Ex. E, Decision and Order dated July 23, 2002). This decision, affirmed by the Appellate Division, comports with federal law because Petitioner failed to show that the conflict adversely affected his lawyer's performance. *See Cuyler*, 446 U.S. at 350.

---

[5] The Report referred to the conflict of interest as a former conflict because the trial attorney had concluded his conflicting representation. (*See* Report at 27). Petitioner alleges that this was error, and that the conflict of interest was a simultaneous one. (*See* Pet. Objs. at 17.) Resolution of this issue is unnecessary because Petitioner has failed to show that the conflict adversely affected his lawyer's performance.

The Court therefore adopts the Report's recommendation that Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claim.

### 4. Petitioner's Ineffective Assistance of Appellate Counsel Claim

Petitioner's final claim is that the state court's finding that he received effective assistance of appellate counsel was contrary to, or an unreasonable application of, clearly established federal law.  Specifically, Petitioner argues that his appellate counsel's failure to raise the issue of the trial judge's erroneous jury instruction on recklessness amounted to constitutionally deficient performance.  (Pet. Mem. at 22-26.)  The Report found this claim to be without merit because appellate counsel's representation was reasonable, and because Petitioner has not proven that any alleged errors prejudiced him.  (Report at 32).  Petitioner contends that the Report underestimates the impact of the erroneous instruction and overestimates the effect of the trial judge's correction of the instruction using the proper language.  (Pet. Objs. at 16.) Petitioner additionally asserts that his appellate attorney's failure to raise the issue of the trial judge's mistaken recklessness instruction constitutes a denial of effective assistance of counsel because in failing to raise this issue, appellate counsel focused on weaker points rather than on stronger ones.  (*Id*. at 17.)

To prevail on an ineffective assistance of appellate counsel claim, a petitioner must meet both components of *Strickland*.  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  "A petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were *clearly and significantly weaker*." *Id*. (emphasis added).  In the appellate counsel context, prejudice is established where a petitioner shows that there was a "reasonable probability" his claim would have been successful before the state's highest court. *Id*. at 534.  "[R]elief may be warranted when a

13

decision by counsel cannot be justified as a result of some kind of plausible trial strategy." *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).

The Court finds that appellate counsel's representation of Petitioner was objectively reasonable. The state court's finding that Petitioner received effective assistance of appellate counsel does not violate the *Strickland* standard. An appellate brief "that raises every colorable issue runs the risk of burying good arguments. . . in a verbal mound made up of strong and weak contention." *Jones v. Barnes*, 103 S. Ct. 3308, 3313 (1983). It was reasonable for appellate counsel to conclude that the trial judge, by correcting the recklessness instruction using the proper language, precluded any effect that the erroneous charge might have on the jury. Appellate counsel's conclusion that it would therefore be wiser to focus on more persuasive issues on appeal was reasonable. *See Aparicio v. Artuz*, 269 F.3d 78, 100 (2d Cir. 2001) (finding that appellate counsel's failure to raise a meritless jury instruction argument was not objectively unreasonable).

The Court thus finds that Petitioner's ineffective assistance of appellate counsel claim does not entitle him to habeas relief, and it adopts the Report's recommendation as to this claim.

## IV. CONCLUSION

The Court adopts in full the Report and Recommendation of Magistrate Judge Smith, and denies Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As the petition makes no substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c). The Court certifies that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962); 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated:      New York, New York

            December 14, 2011

                                    _____
                                         Kimba M. Wood
                                      United States District Judge